UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STANLEY D.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:23-CV-5344-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of his applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of certain medical opinion evidence. Had the ALJ properly considered these opinions, Plaintiff's residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is, therefore, not harmless, and this

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the

Commissioner of Social Security ("Commissioner") for further proceedings consistent with this

Order.

### I.    Factual and Procedural History

Plaintiff filed claims for DIB and SSI on May 9, 2018, alleging disability beginning on

January 31, 2015. Dkt. 9, Administrative Record ("AR") 126, 128, 140–41, 260–61, 267–71. His

applications were denied at the initial level and on reconsideration. AR 124–25, 154–55, 188,

194, 197. He requested a hearing before an ALJ, which took place on August 22, 2019. AR 68–

123, 200–01. Plaintiff was represented by counsel at the hearing. *See* AR 68. The ALJ issued an

unfavorable decision denying benefits on January 30, 2020, and the Appeals Council denied

Plaintiff's request for review. AR 32–37, 49–62. Plaintiff then appealed to this Court, which

reversed the Commissioner's decision and remanded for further proceedings. AR 874–85.

The Appeals Council consolidated the remanded case with a separate claim for SSI that

Plaintiff had filed on January 21, 2021, and ordered a new hearing on the consolidated claims.

AR 892. The second hearing took place before the same ALJ on November 17, 2022, and

Plaintiff was again represented by counsel. AR 790–826. The ALJ issued another unfavorable

decision denying benefits on January 25, 2023. AR 755–89.

The ALJ found Plaintiff had the severe impairments of bilateral hearing loss, major

depressive disorder, and generalized anxiety disorder. AR 761. He determined Plaintiff had the

RFC to perform a full range of work at all exertional levels with certain non-exertional

limitations:

> only occasional exposure to complex oral communications; only occasional
> exposure to a loud noise environment; only occasional exposure to hazards; the
> claimant can understand, remember, and apply detailed but not complex
> instructions; perform predictable tasks; not in a fast paced, production type

environment; exposure to occasional workplace changes; and only occasional interaction with general public and coworkers.

AR 764.

Plaintiff appealed to this Court. Dkt. 5.

## II.   Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence "is a highly deferential standard of review[.]" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up).

"[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.*

1  "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

2  674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

3  Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

4  the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

5  1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

6  **III.    Discussion**

7  Plaintiff contends the ALJ erred in considering certain medical opinion evidence and in

8  assessing Plaintiff's subjective symptom testimony. Dkt. 12 at 1. He argues that the proper

9  remedy for these errors is reversal for an immediate award of benefits. *Id.* at 2.

10  A.  *Medical Opinion Evidence*

11  Plaintiff contends the ALJ erred when considering the medical opinions of two DSHS

12  psychologists, Dr. Kimberly Wheeler and Dr. Peter Weiss; reviewing physician Dr. Myrna

13  Palasi; and Plaintiff's treating mental health counselor, Jason Mills. *Id.* at 1.

14  1.  Medical Opinion Evidence Standard

15  The regulations regarding the evaluation of medical opinion evidence have been amended

16  for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of

17  Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff filed

18  his claim after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

19  Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight,

20  including controlling weight, to any medical opinion(s) or prior administrative medical

21  finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical

22  opinion or prior administrative medical finding in the record and evaluate the persuasiveness of

23  each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

24

1    The two most important factors affecting an ALJ's determination of persuasiveness are

2    the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a).

3    "Supportability means the extent to which a medical source supports the medical opinion by

4    explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–

5    92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1).

6    An opinion is more "supportable," and thus more persuasive, when the source provides more

7    relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R.

8    §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion

9    is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the

10   claim.'" *Woods*, 32 F.4th 785 at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. §

11   416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency

12   factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§

13   404.1520c(b)(2), 416.920c(b)(2).

14                      2.   Analysis

15                         a.   *Kimberly Wheeler, Ph.D., and Peter Weiss, Ph.D.*[2]

16   Plaintiff argues the ALJ erred in considering the medical opinion evidence from two

17   DSHS psychologists, Drs. Kimberly Wheeler and Peter Weiss. Dkt. 12 at 4. Both doctors

18   evaluated Plaintiff more than once over the alleged period of disability.

19   Dr. Wheeler first examined Plaintiff on July 21, 2015. AR 458. She opined Plaintiff had

20   largely mild or moderate limitations on his ability to perform basic work activities, but she found

21   marked limitations in his ability to ask simple questions or request assistance, communicate and

22

23   _____

24   [2] The ALJ's decision addresses the persuasiveness of these opinions together, as do the parties in their briefing. *See* AR 774–75; Dkts. 12, 15, 19. The Court takes the same approach.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

1    perform effectively in a work setting, and complete a normal workday and work week without

2    interruptions from psychologically based symptoms. AR 460–61.

3         On May 31, 2016, Dr. Wheeler evaluated Plaintiff for a second time. AR 447. Again, she

4    noted mostly mild to moderate limitations but found marked limitations in Plaintiff's ability to

5    communicate and perform effectively in a work setting and set realistic goals and plan

6    independently. AR 449.

7         Dr. Weiss performed a psychiatric evaluation on May 16, 2018. AR 476. He opined that

8    Plaintiff was severely impaired in his ability to perform activities within a schedule, maintain

9    regular attendance, and be punctual within customary tolerances without special supervision and

10   to complete a normal workday and work week without interruptions from psychologically based

11   symptoms. AR 477. He also found marked limitations in Plaintiff's ability to set realistic goals

12   and plan independently, communicate and perform effectively, and maintain appropriate

13   behavior in a work setting. AR 477–78.

14        Dr. Weiss examined Plaintiff again on May 14, 2020, and noted the same marked and

15   severe limitations to which he had opined two years earlier. AR 1199–1201.

16        Finally, Dr. Wheeler examined Plaintiff for a third time on April 21, 2022. AR 1268. In

17   this most recent evaluation, she assessed more moderate than mild limitations, as well as marked

18   limitations in Plaintiff's ability to perform activities within a schedule, maintain regular

19   attendance, and be punctual within customary tolerances without special supervision; adapt to

20   changes in a routine work setting; ask simple questions or request assistance; communicate and

21   perform effectively in a work setting; and set realistic goals and plan independently. AR 1269–

22   70.

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1        The ALJ found the opinions of Drs. Wheeler and Weiss "not very persuasive." AR 774.

2   He found the opinions were inadequately supported by the doctors' own findings and were

3   inconsistent with the records from Plaintiff's treating providers. *Id.* The ALJ also wrote the

4   opinions were not persuasive because the doctors did not have the opportunity to review the

5   longitudinal record "to form a more comprehensive opinion of functioning." *Id.*

6        A number of the ALJ's findings relate to the supportability of the two doctors' opinions.

7   First, the ALJ wrote that the opined communication limitations were not supported because

8   "[n]either doctor reported an inability to communicate with the claimant[.]" *Id.* Substantial

9   evidence does not entirely support this finding. It is true that Dr. Weiss' evaluations do not

10  describe communication issues, noting in both 2018 and 2020 that Plaintiff's speech was normal

11  and his attitude and behavior were cooperative. AR 478–79, 1202.

12       However, Dr. Wheeler's evaluations contain extensive notes documenting Plaintiff's

13  communication limitations. In July 2015, Dr. Wheeler observed "[s]ome word retrieval issue[s]"

14  and noted Plaintiff's hesitant report that he believed he was fired from one of his past jobs for

15  "communication issues." AR 458. Dr. Wheeler listed social awkwardness as a symptom

16  affecting Plaintiff's ability to work, noting his reports that he had been fired repeatedly for

17  unclear reasons that seemed related more to his ability to fit in than to performance issues. AR

18  459. She described Plaintiff's behavior as they discussed this issue:

19          Zero eye contact as he's explaining this, gets lost in his pondering. . . . In his
            demonstration of conversation, is halting, hesitant, clearly conveying his
20          discomfort in conveying information they didn't want to hear. . . . Speech is
            peppered with gaps, as he searches for how to say the right thing. . . . Very hard for
21          him to express, consistent with the issue.

22  *Id.* In the mental status exam from this evaluation, Dr. Wheeler documented abnormalities in

23  Plaintiff's speech, writing that he was "[s]low to express himself, with emotional loading

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1  wrapped up in his words" and opining that this "[w]ould strain work relationships." AR 461. She

2  also noted that his thought process was "broken with pauses" and "sometimes hard to follow,

3  requiring coworkers' patience." AR 462.

4      In May 2016, Dr. Wheeler again noted Plaintiff's general isolation and social

5  awkwardness, but she opined that Plaintiff's speech was "[m]uch more fluid this visit, within the

6  range of what would be needed for work." AR 448–50.

7      Finally, in her most recent assessment, Dr. Wheeler opined that, separate from his

8  hearing problems, Plaintiff's communications skills were poor: "Slow to respond, doesn't know

9  what to say, speaks in vague, nonspecific manner. Lots of empty placeholder speech. Comes

10  across as less than engaged in conversation. Attention is poor. Makes little effort to be heard, to

11  make his point." AR 1269. She also wrote Plaintiff displayed "a lack of effort to engage with

12  others, no clear desire to be understood or communicate his point." AR 1270. She opined that

13  this was "most likely learned behavior, after years of not being able to socially connect with

14  others. When he speaks, it's as if he gives up repeatedly in each sentence, sometimes dropping

15  off, not finishing what he was saying." AR 1270–71. Dr. Wheeler also noted these speech and

16  behavioral patterns in the mental status exam from this evaluation:

17      Latent responding. Slow to articulate his sentences. His communication issues are
        not limited to his hearing. He pauses. *sigh* In the. Middle of each. *sigh*
18      Sentence. For lengthy. *sigh* Pauses. When asked directly, he said that this is
        stressful. . . . Huge sigh each time before he speaks. Gives up, struggles to put
19      effort into making himself understood.

20  AR 1271.

21      Although Dr. Wheeler did not report a complete "inability to communicate" with

22  Plaintiff, her 2015 and 2022 evaluations in particular detail Plaintiff's struggles to communicate

23  and the effect these limitations would have in the workplace. Therefore, the ALJ's finding that

24

1   both doctors failed to support the opined communication limitations is not backed by substantial

2   evidence.

3       The ALJ also notes, presumably in reference to the opined communication limitations,

4   that Plaintiff "regularly interacts with family." AR 774. The ALJ provides no citation to the

5   record for this assertion. *See id.* Even assuming the ALJ was referring to the note from Dr.

6   Wheeler's 2016 evaluation that Plaintiff "[s]pends about two hours daily talking with his

7   parents," on whose property he was living at the time (AR 448), the ALJ provides no explanation

8   of how Plaintiff's ability to interact with his own parents refutes Dr. Wheeler's conclusion that

9   he would struggle to communicate effectively in a work setting. Because of this lack of

10  reasoning and specific reference to the record, the Court cannot determine whether Plaintiff's

11  ability to interact with his family is consistent with the opined limitations. *See Blakes v.*

12  *Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and

13  logical bridge from the evidence to [his] conclusions so that we may afford the claimant

14  meaningful review of the SSA's ultimate findings.").

15      Further, the ALJ wrote that the doctors' opinions were "not supported by their own

16  findings on exam," citing the mental status exam from Dr. Wheeler's 2016 evaluation as an

17  example. AR 774. In that exam, Dr. Wheeler found Plaintiff's thought process and content were

18  within normal limits, adding the note: "Organized and goal-directed. Content rather vacant." AR

19  451. She found Plaintiff's orientation, perception, memory, fund of knowledge, and abstract

20  thought were within normal limits. *Id.* Though also within normal limits, she noted his insight

21  was "fair" and his judgment was "fine by test, impoverished with regard to self-care, self-

22  assertion." *Id.* The ALJ acknowledges that some of these findings are "consistent with severe

23  mental impairments" but states they "do not suggest disabling conditions." AR 774. The ALJ

24

1  again does not explain how these particular findings, though largely normal, conflict with Dr.

2  Wheeler's opinion that Plaintiff had marked limitations in his ability to communicate and

3  perform effectively in a work setting or set realistic goals and plan independently.

4        The ALJ also found Dr. Wheeler's opinion "internally inconsistent because she noted that

5  the claimant's 'mental health will be best served by working.'" AR 774. This note appeared in

6  Dr. Wheeler's 2016 evaluation. AR 450. Again, the ALJ does not explain the relationship

7  between this comment and the opinion that Plaintiff was limited in certain areas. It is conceivable

8  that an individual's mental health could be best served by working but other limitations would

9  prevent them from doing so. Also, nowhere in Dr. Wheeler's 2016 evaluation did she offer the

10  conclusion that Plaintiff was permanently incapable of working. Indeed, she recommended

11  therapy and vocational training or services to address some of Plaintiff's limitations and opined

12  that he might only be impaired for six months with appropriate treatment. AR 450.

13        Addressing the consistency factor, the ALJ found that the opinions from Drs. Wheeler

14  and Weiss were not consistent with the overall evidence in the record. AR 774. He wrote that

15  Plaintiff's records from his treating providers showed that he was able to "communicate

16  effectively, seek/ask for care for his conditions, and answer questions." *Id.* In support of this

17  finding, the ALJ cited generally to three exhibits consisting of 312 pages and about three and a

18  half years' worth of medical records. *See id.*, citing AR 1203–36, 1297–1577. Similarly, the ALJ

19  stated that the doctors' opinions were inconsistent with the overall record showing routine,

20  conservative treatment, intact cognition, and ability to engage in a range of activities, with no

21  evidence he has required specialized inpatient or intensive outpatient psychiatric care. AR 774–

22  75. The only citation in support of these statements covers 240 pages of medical records. *See* AR

23  774, citing AR 1297–1537. These broad references to the record are not specific enough to allow

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1  the Court to build a logical bridge from the evidence to the ALJ's conclusions. *See Blakes*, 331

2  F.3d at 569. Therefore, the Court cannot determine whether substantial evidence in the record

3  supports these findings.

4                                       *b.   Myrna Palasi, M.D.*

5        Plaintiff next contends the ALJ erred in assessing the medical opinion of reviewing

6  physician Dr. Myrna Palasi. Dkt. 12 at 17.

7        On June 14, 2018, Dr. Palasi reviewed Dr. Wheeler's 2015 evaluation, Dr. Weiss' 2018

8  evaluation, and a May 2018 evaluation from Valley View Health Center.[3] AR 452. Based on

9  these documents, she opined Plaintiff had severe limitations in his ability to perform activities

10  within a schedule, maintain regular attendance, and be punctual within customary tolerances and

11  to complete a normal workday and work week without interruptions from psychologically based

12  symptoms. AR 453. She also found marked limitations in his ability to communicate and

13  perform effectively in a work setting, maintain appropriate behavior in a work setting, and set

14  realistic goals and plan independently. *Id.*

15        The ALJ stated only that Dr. Palasi's opinion was not persuasive for the same reasons as

16  Drs. Weiss and Wheeler's opinions and because she did not personally examine Plaintiff. AR

17  775. As described above, the Court cannot determine whether substantial evidence supports the

18  ALJ's findings regarding Drs. Weiss and Wheeler's opinions. Consequently, the ALJ also failed

19  to provide sufficient support for his finding that Dr. Palasi's review opinion was not persuasive.

20

21

22

---

23      [3] As Defendant notes, although Dr. Palasi's report dates this record as "05/11/2018," it appears to refer to
the DSHS evaluation that took place at Valley View Health Center on May 17, 2018. *See* AR 452, 566–71; Dkt. 15
24  at 14 n.4.

1                   *c.   Harmless Error*

2         Had the ALJ properly considered the opinions of Drs. Wheeler, Weiss, and Palasi, he

3  may have included additional limitations in the RFC. For example, all three doctors found

4  marked limitations in Plaintiff's ability to communicate and perform effectively in a work setting

5  and to set realistic goals and plan independently. AR 449, 453, 460, 477–78, 1201, 1270. They

6  also found marked to severe limitations in Plaintiff's ability to perform activities within a

7  schedule, maintain regular attendance, and be punctual within customary tolerances without

8  special supervision. AR 453, 477, 1200, 1270. These opined limitations are not fully reflected in

9  the RFC. *See* AR 764. The ultimate disability determination may have changed if the ALJ

10  properly considered the limitations opined to by Drs. Wheeler, Weiss, and Palasi while

11  formulating the RFC and throughout the remaining steps of the sequential evaluation process.

12  Accordingly, the ALJ's error is not harmless and requires reversal.[4]

13             **B.** *Subjective Symptom Testimony*

14         Plaintiff also argues the ALJ did not provide sufficient reasons for discounting his

15  testimony about the severity of his symptoms. Dkt. 12 at 18–19. The Court concludes the ALJ

16  committed harmful error in assessing the medical opinion evidence and must re-evaluate all the

17  medical evidence on remand. Because Plaintiff may be able to present new evidence and new

18  testimony on remand and because the ALJ's reconsideration of the medical evidence may impact

19  the assessment of Plaintiff's subjective testimony, the ALJ must also reconsider Plaintiff's

20  testimony on remand.

21

22

23      [4] Plaintiff also challenges the ALJ's evaluation of medical opinion evidence from Jason Mills, Plaintiff's mental health counselor. Dkt. 12 at 1. Because the Court finds reversible error in the ALJ's evaluation of the other challenged medical opinion evidence and all medical opinion evidence must be re-evaluated on remand, it is not

24  necessary to address the ALJ's evaluation of Mr. Mills' opinion.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

C. *Remedy*

Plaintiff contends an immediate award of benefits is warranted because the record is complete, no outstanding questions remain, and the medical opinion and testimonial evidence should be credited as true to establish disability. Dkt. 12 at 20.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined the ALJ must re-evaluate the medical opinion evidence and Plaintiff's subjective symptom testimony. Further, based on the errors identified above, issues remain that must be resolved concerning Plaintiff's functional capabilities and his ability to perform other jobs existing in significant numbers in the national economy. Therefore, remand for further administrative proceedings is appropriate.

1

IV.     **Conclusion**

2          Based on the foregoing reasons, the Court hereby finds that the ALJ improperly

3  concluded Plaintiff was not disabled beginning January 31, 2015. Accordingly, Defendant's

4  decision to deny benefits is reversed and this matter is remanded for further administrative

5  proceedings in accordance with the findings contained herein.

6          Dated this 8th day of February, 2024.

7

8                                              _____
                                               David W. Christel
9                                              United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 14